[L. A. No. 26351. In Bank. Aug. 7, 1961.]

ROBERT COTTON, JR., et al., Petitioners, v. SUPERIOR COURT OF IMPERIAL COUNTY, Respondent.

Charles K. Hackler, Marshall Ross and Richard W. Pether-bridge for Petitioners.

A. L. Wirin and Fred Okrand as Amici Curiae on behalf of Petitioners.

James E. Marable, District Attorney, and James E. Hamilton, Deputy District Attorney, for Respondent.

WHITE, J.—By this proceeding in prohibition the 23 petitioners challenge the jurisdiction of the Superior Court of Imperial County to try them on an indictment returned by the grand jury.

It is the contention of petitioners that there is insufficient evidence to sustain the various counts of the indictment in question.

After amendment thereof, and action by respondent court dismissing certain counts pursuant to the provisions of section 995 of the Penal Code, the indictment charges the petitioners and one Gregoric Nova Sanchez in nine counts with the commission of the following offenses:

I. Conspiracy to violate Penal Code section 404 (rioting), Penal Code section 245 (assault with deadly weapon and felonious assault), Penal Code section 602, subdivision (e) (trespass upon real property) and Penal Code section 207 (kidnapping).

II. Assault with deadly weapon upon Corona.

III, IV, VI. Aggravated assault on Martinez, Ramirez and Huante, respectively.

IX, X, XVI. Kidnapping Huante, Ramirez and Martinez, respectively.

XVII. Riot.

The incident which occasioned the indictment arose at the Joe Corona Labor Camp which is used to house farm workers, mostly Mexican contract workers (referred to as ''braceros''). The camp had been picketed for some time by the AFL-CIO in an effort to induce the braceros to join a strike being conducted for the purpose of raising wages from 90 cents to $1.25 an hour and for union contracts. On the morning of February 9, 1961, a caravan of cars and trucks brought about 50 members of the union to the camp gate. At first, they verbally attempted to persuade the braceros to join their cause, and to come out of the camp. When the gate was opened to allow Fred Corona, a food contractor, into the camp, some of the pickets forced their way in. Fighting started, and Corona, Martinez (a cook), Ramirez and Huante (both braceros) were injured. When Deputy Sheriff Prikola entered the camp and placed everyone under arrest, the picketers ran to their cars and departed. All petitioners, except two (Lassig and Martin) were occupants of these cars and were apprehended by Deputy Sheriff Sutton. Lassig and Martin were indicted on the testimony of witnesses to the incident.

It is contended that there was no planned conspiracy, but that the alleged crimes were a ''. . . spontaneous outgrowth of an unplanned altercation over whether a camp gate should be kept open or closed. . . .'' Evidence brought forth by the prosecution in regard to the conspiracy was furnished primarily by three witnesses, who observed the caravan of cars and heard statements by some of the petitioners that could be construed to support the theory of conspiracy.

Section 939.8 of the Penal Code provides that the grand jury shall find an indictment when all the evidence before it, taken together, if unexplained or uncontradicted would, in its judgment, warrant a conviction by a trial jury. Section 995,

462

subdivision 2, of the Penal Code provides that the court must set aside the indictment upon motion of the defendant when the accused ". . . has been indicted without reasonable or probable cause." ▮▮▮ Probable cause is shown if a man of ordinary caution or prudence could entertain a strong suspicion of the guilt of the accused, and if some rational ground exists for an assumption of guilt, the indictment will not be set aside. (*Bompensiero* v. *Superior Court*, 44 Cal.2d 178, 183 [281 P.2d 250].)

▮▮▮ We have concluded that the evidence presented to the grand jury on the question of conspiracy as charged in count I is sufficient to meet the standards required to uphold the indictment with the exception of the averment that petitioners conspired to violate Penal Code section 207 for, as we shall later see, the testimony relative to a violation of the Penal Code section just cited is inadequate to bring petitioners' conduct within the purview of the law which denounces kidnapping. However, this does not invalidate the accusatory pleading because it also charges petitioners with conspiring to commit other offenses based on evidence to which similar objection cannot be made. (*People* v. *Vetri*, 178 Cal.App.2d 385, 394 [2 Cal.Rptr. 795]). ▮▮▮ As to the conspiracy count, there was testimony by one witness who followed the caravan of some 25 automobiles across the city of Brawley and witnessed the occupants of the parade of vehicles enter the camp. Another witness who was riding in one of the cars testified that petitioner Williams, after the caravan stopped en route for a conference, returned to his automobile and said to the witness, "Now, we go in force." Another witness who was employed by the Imperial Valley Farmers testified that on the morning in question she had a conversation with petitioner Martin who asked her if she was working for the Imperial Valley Farmers, and when she replied in the affirmative, petitioner Martin said, "Well, you'd better start looking for another job," and when the witness asked him why, Martin said, ". . . because they were going to pull all those men off. . . ." There was also testimony that some of the petitioners called out, "Get out or we are going to burn you out; get out of this camp or we are going to throw you out." We are satisfied that the evidence before the grand jury is sufficient to meet the standard required to uphold count I of the indictment charging that petitioners combined and agreed together to commit certain unlawful acts.

As to the substantive offenses charged in counts II, III,

V, VI (assault with a deadly weapon—Pen. Code, § 245), and count XVII (riot—Pen. Code, § 405), we shall not set forth in detail the evidence with regard thereto. Suffice it to say that it was sufficient both as to quantum and identification of petitioners to provide reasonable and probable cause for the grand jury to return an indictment thereon. Furthermore, at the oral argument, in answer to a question from the bench, "You do not seem to be challenging the direct counts of assault with a deadly weapon upon Corona, and the aggravated assault on Martinez, Ramirez and Huante, and rioting," counsel for petitioners replied, "By the individuals who, the record shows participated in them, I do not, your Honor. That is correct."

 Petitioners also contend that there could be no trespass since the possessory right of landowners (Pen. Code, § 602, subdivision (*l*)) is overridden by Penal Code section 552.1, subdivision (a), which permits trespass in an attempt to organize a labor union. However, Penal Code section 552.1, subdivision (a) applies only to posted *industrial* property— the property upon which the incident here occurred was a farm labor camp.

 We come now to petitioners' final contention with regard to counts IX, X and XVI, charging kidnapping and conspiracy to kidnap in violation of section 207 of the Penal Code. This section, in part, provides that any person who forcibly steals, takes or arrests another and carries him from *one part of the county to another* is guilty of kidnapping. Unlike Penal Code section 209, there need be no intent to hold or detain the person or to use the person for some purpose without his consent.

To sustain count IX the district attorney relies on the testimony of Pilar Mondragon Huante. This witness testified he was "chased" into the barracks; that he left the barracks when one of the petitioners with a knife in his hand "told me to get out." Some of the petitioners had sticks and stones in their hands. When asked if he was "chased" or "pushed" out of the barracks, the witness replied, "No, no, no, they just told me to leave (the barracks) and I went out." When asked, "Did anyone at any time tell you to get out of the camp?" the witness responded, "All of them were hollering for us to get out of the camp."

As to count X, we are referred to the testimony of Manuel Lopez Ramirez, who testified that he was "pushed toward the doors where the cars entered . . . the front gate."

To support the allegations of count XVI, the prosecution

relies on the testimony of Patrick Martinez who testified he was in a toilet, opened the door and was confronted by ". . . a colored man right by the door, and there was an American man with him. Then they grabbed me by the shirt right here and he said, 'Come here, God Damn you' and then when he grabbed me and pulled me out I felt the blow back here in the back of the head." He further testified that the colored man "pulled me out," and that he was "dragged some fifteen feet," thrown to the ground and kicked in the back and on his legs.

The prosecution relies principally on *People* v. *Rich*, 177 Cal.App.2d 617 [2 Cal.Rptr. 600]. In that case, the victims, under threat of a knife attack, were forced to accompany defendant for 10 or 12 blocks in an automobile while he attempted to escape following the burglary of a market. Certain broad language used in that case should be confined to the facts therein which manifestly demonstrate a commission of the offense denounced by section 207 of the Penal Code, and such language cannot reasonably be held applicable to the factual background and evidentiary features of the case with which we are here concerned.

That section would have no application at all, but for a 1905 amendment adding ". . . into another part of the same county." This amendment was added in view of *Ex parte Keil*, 85 Cal. 309 [24 P. 742], where it was held that the forcible removal of a person from San Pedro to Santa Catalina Island, both in Los Angeles County, could not constitute kidnapping under the statute as it existed at that time. A review of those cases in which the statute was applied since 1905 reveals that each asportation was for the accomplishment of an illegal purpose, such as in the *Rich* case. That the taking and carrying away must be done for an illegal purpose or with an illegal intent in order to constitute a violation of section 207 was recognized by this court in *People* v. *Oliver*, 55 Cal.2d 761, 768 [12 Cal.Rptr. 865, 361 P.2d 593]. In the instant case, the only movements that occurred were those natural in a riot or assault. The evidence reveals that persons were pushed to the ground, dragged around, chased, and assaulted. All "asportation" in the instant case would appear to be only incidental to the assault and rioting.

Although there are no California decisions resembling the instant situation, one somewhat analogous was ruled upon in New York. In *People* v. *Kuntzsch*, 64 N.Y.S.2d 116, the defendant was a member of a labor union. During a strike at

a plant, the complainant was accosted by defendant, who told her she ought to join the union. He physically forced her to enter a cab and took her to union headquarters, against her will. Defendant was indicted by the grand jury for kidnapping, under a statute providing that a person who wilfully seizes, confines, inveigles, or kidnaps another with intent to cause him, without authority of law, to be confined or imprisoned within this state, is guilty of kidnapping.

The indictment was dismissed, the court stating at page 119: "We must give the statute a practical construction. . . . We must look to the length of the detention and the acts and conduct of the defendant to determine whether the seizure coupled with the intentional detention is within the legislative intent expressed in a kidnapping statute."

To us, it does not seem reasonable that the California Legislature, in enacting Penal Code section 207, intended the statute to apply to a case of assault or riot such as occurred in the case now engaging our attention. Such a holding could result in a rule that every assault could also be prosecuted for kidnapping under Penal Code section 207, as long as the slightest movement was involved. Where the movement is incidental to the alleged assault, Penal Code section 207 should not have application, as the Legislature could not reasonably have intended that such incidental movement be a taking " . . . from one part of the county to another."

" 'All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice or oppression or an absurd consequence. It will always be presumed that the legislature intended exceptions to its language which would avoid results of this character.' " (People v. Oliver, supra, 55 Cal.2d 761, 767, quoting from Ex parte Lorenzen, 128 Cal. 431, 440 [61 P. 68, 79 Am.St.Rep. 47, 50 L.R.A. 55].) (Emphasis added.)

Let a peremptory writ issue restraining respondent court from taking any further proceedings other than dismissals as to count I, insofar as it charges conspiracy to violate section 207 of the Penal Code, and as to counts IX, X and XVI.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Dooling, J., concurred.

Petitioners' application for a rehearing was denied September 6, 1961.