Filed 12/18/25  P. v. Fields CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B342220 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 24AVCF00270) |
| v. | |
| FITZGERALD FIELDS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Emily J. Cole, Judge.  Reversed.

Naomi L. Svensson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Daniel C. Chang, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

Fitzgerald Fields appeals from the judgment after a jury convicted him of kidnapping and assault.  Fields argues that substantial evidence did not support his conviction for kidnapping and that the trial court erred in instructing the jury on kidnapping.  We conclude that substantial evidence supported Fields's conviction, but that the trial court prejudicially erred in failing to instruct the jurors that they could consider whether Fields's movement of the victim was incidental to his committing assault.  Therefore, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Fields and his cousin Marilyne Adams lived in a supportive housing complex that served people experiencing homelessness, mental health issues, and substance abuse issues.  Fields lived in the complex's temporary "dorms," and Adams lived in a permanent apartment.  Adams was in her late 60's, appeared "a bit frail," suffered from dementia, and had a history of substance abuse.

One day in February 2024 a surveillance camera captured a two-minute encounter between Fields and Adams. As Adams walked away from her apartment through a courtyard area, Fields came out of the apartment and walked quickly toward Adams.  Fields put one arm around Adams's neck and forcibly walked her back toward her apartment.  Halfway back to the apartment, Adams fell to the ground, and Fields dragged her by her neck the rest of the way.  When they reached the door to the apartment, Fields stood over Adams, with only Fields's back

visible in the surveillance recording. A few seconds later Fields pulled Adams to her feet by her hands and pushed her inside the apartment.

Forty seconds later security guard Nicco Gaines arrived at Adams's apartment. Gaines testified Adams's front door was partially open. Gaines went inside, where he heard screaming and Adams saying, "'Get out.'" Fields told Gaines that Adams was his cousin and that "she [had] his drugs or . . . his money or something in the house." Gaines told Fields to go back to his dorm and escorted Fields out of the apartment.

Later that day, Los Angeles County Sheriff's Deputy Ignacio Morales went to the housing complex, viewed the surveillance video, and interviewed Adams and Fields. Adams showed Deputy Morales where the physical encounter with Fields began. Deputy Morales's partner measured the distance from that location to Adams's front door, which Deputy Morales testified was "11 steps." Deputy Morales saw redness on Adams's neck "resembling some type of strangulation," as well as redness on her ear and the left side of her face.

The People charged Fields with kidnapping (Pen. Code, § 207, subd. (a))[1] and assault with force likely to produce great bodily injury (§ 245, subd. (a)(4)). A jury found Fields guilty of kidnapping, not guilty of assault with force likely to produce great bodily injury, but guilty of the lesser included offense of misdemeanor assault (§ 240).

After Fields waived his right to a jury trial on the alleged aggravating factors, the trial court found four of them true under California Rules of Court, rules 4.421(b)(1)-(3) & (5), and found

---

[1] Statutory references are to the Penal Code.

3

Fields had four prior serious or violent felony convictions, within the meaning of the three strikes law (§§ 667, subds. (b)-(j), 1170.12, subds. (a)-(d)).  The court granted Fields's motion to strike three of the four prior serious or violent felony convictions under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.  The court also granted the People's motion to dismiss the misdemeanor assault conviction under section 1385.  The court sentenced Fields to 16 years on his conviction for kidnapping (the upper term of eight years, doubled under the three strikes law).  Fields timely appealed.

## DISCUSSION

A.     *Substantial Evidence Supported Fields's Conviction for Kidnapping*

1.     *Applicable Law and Standard of Review*

Section 207, subdivision (a), provides:  "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person . . . into another country, state, or county, or into another part of the same county, is guilty of kidnapping."  "To prove the crime of simple kidnapping, 'the prosecution must generally "prove three elements: (1) a person was unlawfully moved by the use of physical force or fear; (2) the movement was without the person's consent; and (3) the movement of the person was for a substantial distance."'"  (*People v. Hin* (2025) 17 Cal.5th 401, 469 (*Hin*); see *People v. Bell* (2009) 179 Cal.App.4th 428, 435

4

(*Bell*).)[2]  "This last element, i.e., that the victim be moved a substantial distance, is called the 'asportation' element."  (*Bell*, at p. 435.)

In "determining whether the movement in question was ""substantial in character,"" 'the jury should consider the totality of the circumstances.'  [Citation.]  'Thus, in a case where the evidence permitted, the jury might properly consider not only the actual distance the victim is moved, but also such factors as whether that movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, and increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes.'"  (*Hin, supra,* 17 Cal.5th at p. 469; see *People v. Martinez* (1999) 20 Cal.4th 225, 237, overruled on another ground in *People v. Fontenot* (2019) 8 Cal.5th 57, 70; *People v. Hall* (2024) 104 Cal.App.5th 1077, 1089.)

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable

---

[2]  Aggravated kidnapping (§ 209) requires carrying "'away an individual to commit robbery, rape, oral copulation, sodomy,'" or certain enumerated sex crimes.  (*People v. Hall* (2024) 104 Cal.App.5th 1077, 1089; see *People v. Lewis* (2023) 14 Cal.5th 876, 890 ["Aggravated kidnapping builds on the definition of kidnapping in section 207."]; *People v. Ledesma* (2017) 14 Cal.App.5th 830, 836 [aggravated kidnapping under section 209 "requires proof of certain elements not required for" simple kidnapping under section 207].)

trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*Hin, supra*, 17 Cal.5th at p. 451; see *People v. Collins* (2025) 17 Cal.5th 293, 307.) "''"[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding."''" (*People v. Ramirez* (2022) 13 Cal.5th 997, 1118.)

2.      *Substantial Evidence Supported the Jury's Finding Fields Moved Adams a Substantial Distance*

Fields argues there was insufficient evidence he moved Adams a substantial distance.  He contends that he moved Adams only 10 or 11 steps from the courtyard to her apartment and that Adams's "circumstances did not change significantly during their interaction."  Substantial evidence, however, supported the jury's finding Fields moved Adams a substantial distance.  Though Fields moved Adams only 10 or 11 steps, "'no minimum distance is required to satisfy the asportation requirement.'" (*People v. Waqa* (2023) 92 Cal.App.5th 565, 578 (*Waqa*); see *id.* at p. 583 [moving the victim eight to 10 feet was sufficient]; *People v. Singh* (2019) 42 Cal.App.5th 175, 187-188 [moving a child five steps or 10 feet was sufficient].)

A reasonable juror could find that moving Adams indoors from the public courtyard, which was accessible to others and monitored by security guards and surveillance cameras, increased the risk of harm to Adams by decreasing the likelihood of detection and increasing Fields's opportunity to commit additional crimes.  (See *Hin, supra*, 17 Cal.5th at pp. 469-470 [substantial evidence supported the finding of asportation where

6

the defendants moved the victims 30 to 35 feet downhill from a park path to a more secluded area]; *Waqa, supra*, 92 Cal.App.5th at p. 583 [substantial evidence supported the finding of asportation where the defendant dragged the victim from a small restroom stall to a larger stall, which was farther from the restroom's exit and gave the defendant "more room to maneuver, facilitating the rape and other potential crimes"]; *People v. Singh, supra*, 42 Cal.App.5th at p. 188 [substantial evidence supported the finding of asportation where the defendant picked up a two-year-old child on a bus and moved him five steps away from the bus before the child's mother caught up]; *People v. Arias* (2011) 193 Cal.App.4th 1428, 1435 [trial court did not err in denying a motion for acquittal where the defendant moved the victim 15 feet to the inside of the victim's apartment].)

Fields argues that, though Adams "ended up inside her apartment, away from the observation of the surveillance camera or others, the door remained open and she could still be heard outside." To be sure, the risk of harm to Adams would have been greater with the door closed. But moving her from the public courtyard into the apartment—even with the door partially open—increased the risk of harm. That the security guard arrived shortly after Fields moved Adams inside, which may have prevented Fields from committing additional crimes, does not mean the movement did not increase the risk of harm. (See *People v. Vines* (2011) 51 Cal.4th 830, 870 [""that these dangers do not in fact materialize does not, of course, mean that the risk of harm was not increased""], overruled on another ground in

*People v. Hardy* (2018) 5 Cal.5th 56, 104; *Waqa*, *supra*, 92 Cal.App.5th at p. 580 [same].)[3]

The cases Fields relies on are distinguishable. In *People v. Ellis* (2025) 108 Cal.App.5th 590 the defendant moved the victim 10 feet from the sidewalk to the middle of the street, which did not decrease the likelihood of detection or increase the defendant's ability to commit additional crimes. (*Id.* at p. 599.) In *People v. Daly* (1992) 8 Cal.App.4th 47 the defendant moved the victim 40 feet across a parking structure in an unsuccessful attempt to get the victim into his van. The court in *Daly* stated: "The entire movement was within the parking structure and we cannot say on this record the risk of harm to the victim was increased by the movement of this short distance." (*Id.* at p. 57.) Fields moved Adams from a public outdoor space to a private indoor space.

> B. *The Trial Court Prejudicially Erred in Not Instructing the Jury on the Associated Crime Factor*

> 1. *Relevant Proceedings*

The trial court instructed the jury on kidnapping with CALCRIM No. 1215 as follows: "To prove that the defendant is guilty of this crime, the People must prove that 1. the defendant

---

[3] In *People v. Vines*, *supra*, 51 Cal.4th 830 the defendant was convicted of aggravated kidnapping, and in *Waqa*, *supra*, 92 Cal.App.5th 565 the jury found true an aggravated kidnapping circumstance, both of which required that "the movement of the victim substantially increased the risk of harm" "over and above" that necessarily present in the underlying offense. (*Vines*, at p. 869; see *Waqa*, at p. 573.)

took, held, or detained another person by using force or by instilling reasonable fear; 2. . . . that in using that force or fear, the defendant moved the other person a substantial distance; and 3. the other person did not consent to the movement."

The trial court gave the following definition of "substantial distance" from CALCRIM No. 1215: "Substantial distance means more than a slight or trivial distance. In deciding whether the distance was substantial, you must consider all the circumstances relating to the movement. Thus, in addition to considering the actual distance moved, you may also consider other factors such as whether the movement increased the risk of physical or psychological harm, increased the danger of a foreseeable escape attempt, or gave the attacker a greater opportunity to commit additional crimes, or decreased the likelihood of detection." The court, however, did not give a bracketed portion of CALCRIM No. 1215, which would have instructed the jury that, in deciding whether Fields moved Adams a substantial distance, the jury could also consider whether the distance Adams was moved "was beyond that merely incidental to the commission of" the assault.[4]

### 2. *Applicable Law and Standard of Review*

In "'criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which

---

[4] The bench notes for CALCRIM No. 1215 state: "The court must give the bracketed language on movement incidental to an associated crime when it is supported by the evidence."

9

are necessary for the jury's understanding of the case.'" (*People v. Diaz* (2015) 60 Cal.4th 1176, 1189; see *People v. Merritt* (2017) 2 Cal.5th 819, 824 [the "trial court has a sua sponte duty to instruct the jury on the essential elements of the charged offense"].) "We review a claim of instructional error de novo." (*People v. Thomas* (2023) 14 Cal.5th 327, 382; see *People v. Delacerda* (2015) 236 Cal.App.4th 282, 288 (*Delacerda*) [we review "'the wording of a jury instruction de novo'" and determine "whether 'the instructions are complete and correctly state the law'"].)

> 3.    *The Court Erred in Not Instructing the Jury To Consider Whether the Movement Was Incidental to the Assault*

Fields contends the trial court erred in failing to instruct the jury sua sponte to consider whether his movement of Adams was merely incidental to the assault.[5]  Fields is correct.

---

[5]    The People argue Fields forfeited the issue by not asking for this portion of the pattern instruction.  As discussed, however, the trial court had "a sua sponte duty to instruct the jury fully as to the essential elements of the charged offense." (*People v. Quinonez* (2020) 46 Cal.App.5th 457, 463.)  "[F]ailure to instruct on movement merely incidental to an associated crime violates 'defendant's right to a correct jury instruction on all the elements of the offense of simple kidnapping.'" (*Delacerda*, *supra*, 236 Cal.App.4th at p. 289; see *People v. Mil* (2012) 53 Cal.4th 400, 409 ["no objection is required to preserve a claim for appellate review that the jury instructions omitted an essential element of the charge"]; *People v. Mason* (2013) 218 Cal.App.4th 818, 823 ["Instructional error as to the elements of an offense is not waived by trial counsel's failure to object."].)

In a kidnapping case "involving an associated crime, the jury should be instructed to consider whether the distance a victim was moved was incidental to the commission of that crime in determining the movement's substantiality. . . . [S]uch consideration is relevant to determining whether more than one crime has been committed." (*People v. Martinez, supra*, 20 Cal.4th at p. 237; see *People v. Williams* (2017) 7 Cal.App.5th 644, 671.) Accordingly, when "supported by the law and evidence," the trial court must give an associated crime instruction. (*Bell, supra*, 179 Cal.App.4th at pp. 434-435, 439; see *Delacerda, supra*, 236 Cal.App.4th at pp. 288-289.) An "'associated crime'" is "*any* criminal act the defendant intends to commit where, in the course of its commission, the defendant also moves a victim by force or fear against his or her will. It is not more complicated than that." (*Bell*, at pp. 438-439; see *People v. Singh, supra*, 42 Cal.App.5th at p. 184; *Delacerda*, at p. 289.)

*Delacerda, supra*, 236 Cal.App.4th 282 is instructive. In that case the defendant went to his ex-girlfriend's home and accused her of cheating on him. (*Id.* at pp. 285, 291-292.) She tried to run away, but each time the defendant tackled her. (*Id.* at pp. 285-287.) After the third time the defendant dragged her from the front door to the bedroom, shoved her into a closet, and blocked her exit. (*Id.* at p. 286.) A jury convicted the defendant of, among other crimes, simple kidnapping and battery against a person with whom the defendant had a dating relationship (§ 243, subd. (e)(1)). (*Delacerda*, at p. 284.)

The court in *Delacerda* held that the defendant's battery against his ex-girlfriend was an associated crime and that the trial court erred in failing to instruct the jury to consider whether the movement of the victim was merely incidental to the battery.

11

(*Delacerda, supra*, 236 Cal.App.4th at p. 284.) The court concluded there were "multiple acts of harmful or offensive touching that occurred . . . before, during, and after the dragging movement which comprised the kidnapping." (*Id*. at p. 291.) Thus, the court in *Delacerda* held, because "the jury could have found that in the course of that harmful or offensive touching, [the victim] was moved . . . against her will," the trial court "should have instructed the jury that in determining whether defendant's movement of [the victim] was substantial, they could consider whether the movement was merely incidental to the crime of domestic violence battery." (*Id*. at p. 293.)

Similarly, here there was evidence Fields moved Adams by force in the course of committing an associated crime—the assault. "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) Fields committed multiple acts of assault: he put his arm around Adams's neck and forcibly walked her toward her apartment; he dragged her by the neck after she fell to the ground; and he pushed her inside the door to her apartment. Though during closing argument the prosecutor stated the assault was "complete" when Fields "knocked [Adams] down" to the ground, the prosecutor also argued Fields continued to assault Adams as he forcibly moved her. In discussing the elements of assault by force likely to produce great bodily injury, the prosecutor stated that Fields's act of "dragging her off . . .[made] the assault worse" and that during the dragging Adams's neck was "jerked off to the side" and "twisted," which the prosecutor argued "can cause great bodily injury all by itself." The prosecutor also argued the surveillance video showed that, once Fields got Adams to the front door of her apartment, there

12

were "sharp jolts" that could have been Fields punching Adams, there was a "bang on [Adams's] shoulder," and there was movement by Fields to push Adams into the apartment.

Thus, the evidence showed "multiple acts" of assault that occurred "before, during, and after the dragging movement which comprised the kidnapping." (*Delacerda*, *supra*, 236 Cal.App.4th at p. 291.) Because the jury could have found Fields moved Adams in the course of committing the assault, the trial court erred in not instructing the jurors that they could consider whether the movement was merely incidental to the assault. (See *Delacerda*, at p. 289; *Bell*, *supra*, 179 Cal.App.4th at p. 439.)

The People argue the "associated crime instruction . . . was not warranted by the evidence" because Fields's "assault on Adams was complete by the time he 'knocked her down' to the ground." The People also argue that, even if the assault was an associated crime, Fields continued to move Adams after he completed the assault, making the movement "more than incidental" to the assault. As discussed, however, there was evidence and argument by the prosecutor that Fields continued to assault Adams after he knocked her down and began to move her. Whether the movement was more than incidental to the assault was a question for a properly instructed jury.

### 4. *The Error Was Not Harmless*

"An instructional error that improperly describes or omits an element of the crime from the jury's consideration is subject to the 'harmless error' standard of review set forth in" *Chapman v. California* (1967) 386 U.S. 18, 24. (*People v. Lamas* (2007) 42 Cal.4th 516, 526; see *People v. Martinez* (2017) 10 Cal.App.5th 686, 709.) Because the trial court's failure to instruct on the

13

associated crime factor resulted in an incomplete instruction on the asportation element of kidnapping, we apply the *Chapman* standard of review. (See *Delacerda, supra,* 236 Cal.App.4th at p. 294 [applying *Chapman* to the trial court's error in failing to instruct on the associated crime factor]; *Bell, supra,* 179 Cal.App.4th at p. 439 [same].) Under *Chapman* we "consider whether it appears beyond a reasonable doubt that the instructional error did not contribute to the jury's verdict." (*Lamas,* at p. 526; see *Martinez,* at p. 709.) For an instructional error to be harmless, the evidence must be "'of such compelling force as to show beyond a reasonable doubt' that the erroneous instruction 'must have made no difference in reaching the verdict obtained.'" (*People v. Harris* (1994) 9 Cal.4th 407, 431; see *People v. Calderon* (2005) 129 Cal.App.4th 1301, 1311.)

In determining whether an instructional error was harmless, we also consider whether "'"the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions."'" (*People v. Scully* (2021) 11 Cal.5th 542, 595; see *People v. Flood* (1998) 18 Cal.4th 470, 484; *Bell, supra,* 179 Cal.App.4th at p. 439.) We consider "'the specific language challenged, the instructions as a whole[,] the jury's findings' [citation], and counsel's closing arguments to determine whether the instructional error 'would have misled a reasonable jury.'" (*Bell,* at p. 439.)

The instructional error here was not harmless beyond a reasonable doubt. Whether Fields moved Adams a substantial distance was not necessarily resolved adversely to Fields under any other jury instruction, and no other instruction, finding, or argument indicated the jurors knew that, in deciding whether the distance was substantial, they could consider whether the

14

movement was merely incidental to the assault. Whether the distance from the courtyard to Adams's apartment was substantial was a key issue; in closing argument counsel for Fields conceded that Fields used force in moving Adams, but argued that the "10 to 11 steps" from the courtyard to Adams's apartment was not a "substantial distance." In addition, the jury appeared to struggle with the issue. During deliberations the jury asked: "Is there any further clarification of substantial distance?" The trial court responded: "Instruction 1215 provides the only definition for substantial distance that can be provided. The Court would refer you back to the entire paragraph of this definition in [Instruction] 1215." (See *In re Martinez* (2017) 3 Cal.5th 1216, 1226-1227 [jury's question is relevant in evaluating prejudice]; *People v. Guiton* (1993) 4 Cal.4th 1116, 1130 ["[i]n determining whether there was prejudice," we consider "any communications from the jury during deliberations"].)

A properly instructed jury could have found Fields's movement of Adams was merely incidental to the assault. "'[I]ncidental movements are brief and insubstantial, and frequently consist of movement around the premises where the incident began. [Citations.] By contrast, relatively short distances have been found not to be incidental where the movement results in a substantial change in "the context of the environment."'" (*Waqa, supra,* 92 Cal.App.5th at p. 578; see *People v. Diaz* (2000) 78 Cal.App.4th 243, 247.)[6] Such a jury

_____

[6] *Waqa, supra,* 92 Cal.App.5th 565 and *People v. Diaz, supra,* 78 Cal.App.4th 243 involved aggravated kidnapping circumstances under section 667.61, not simple kidnapping under

15

could have found Fields's movement of Adams was brief (less than one minute), insubstantial (10 or 11 steps), and not a substantial change of environment.  (See *Cotton v. Superior Court* (1961) 56 Cal.2d 459, 464 [where the victims were "pushed to the ground, dragged around, chased, and assaulted," any asportation was "natural in a riot or assault" and "only incidental to the assault and rioting"]; *People v. Washington* (2005) 127 Cal.App.4th 290, 299 [moving the victims 15 feet from the teller area of a bank to the vault was incidental to the robbery].)

The People argue the error was harmless because whether the movement was incidental to the assault was "just one factor" in determining whether Fields moved Adams a substantial distance.  The People contend no reasonable juror could have found the distance was not substantial in light of the other asportation factors—the actual distance, Adams's vulnerability, the increased risk of harm, the decreased likelihood of detection, and Fields's increased opportunity to commit additional crimes.  As discussed, substantial evidence of these factors supported the jury's finding Fields moved Adams a substantial distance.  However, the People have not shown the evidence was so compelling that a properly instructed jury could not have reached a contrary finding.  Fields moved Adams a relatively short distance from the courtyard to her apartment.  Though the

section 207.  *Waqa* and *Diaz* are nonetheless relevant because the asportation element for both simple kidnapping and the aggravated kidnapping circumstance, as well as aggravated kidnapping under section 209, "requires that the movement be '"more than that which is merely incidental to the commission or attempted commission of"'" the associated crime.  (*Waqa*, at p. 578; see *People v. Dominguez* (2006) 39 Cal. 4th 1141, 1150.)

apartment was a more secluded and therefore more dangerous place, Fields did not close the door, which would have further removed Adams from public view and prevented others from hearing cries for help.  (Cf. *Hin*, *supra*, 17 Cal.5th at pp. 469-470 [defendants moved victims 30 to 35 feet downhill from a park path to a more secluded area]; *People v. Corcoran* (2006) 143 Cal.App.4th 272, 279 [defendant "herded the victims approximately 10 feet from a public area to a small back office without windows and with a solid door"].)

The People also argue the movement was not incidental to the assault because "it was not necessary for [Fields] to move Adams in order to assault her."  The People assert that Fields assaulted Adams before she fell to the ground and that moving Adams after she fell was "not necessary to the assault" and was "'excessive.'"  "'Lack of necessity is a sufficient basis to conclude a movement is not merely incidental.'"  (*People v. Leavel* (2012) 203 Cal.App.4th 823, 835; see *Waqa, supra*, 92 Cal.App.5th at p. 584 [that the defendant "did not need to move [the victim] to rape her further supports the conclusion that the movement was not merely incidental"].)  As discussed, however, Fields continued to assault Adams as he moved her, and the jury could have found Fields needed to move Adams to accomplish his goal of recovering, through the use of force, his belongings from her apartment.  (See *People v. Washington*, *supra*, 127 Cal.App.4th at p. 299 [moving bank robbery victims to the vault room was incidental to the robbery because "there was no excess or gratuitous movement of the victims over and above that necessary to obtain the money in the vault"]; cf. *People v. Corcoran*, *supra*, 143 Cal.App.4th at pp. 279-280 [movement was not incidental to the attempted robbery where "the movement of

17

the victims had nothing to do with facilitating taking cash from the bingo hall; defendant and his accomplice had aborted that aim, and their seclusion of the victims in the back office under threat of death was clearly 'excess and gratuitous'"].)

## DISPOSITION

The judgment is reversed.

SEGAL, J.

We concur:

MARTINEZ, P. J.

STONE, J.