92 Cal.Rptr.2d 781 (2000)
78 Cal.App.4th 274
The PEOPLE, Plaintiff and Respondent,
v.
Cicely Keshawn REED, Defendant and Appellant.
No. F030638.
Court of Appeal, Fifth District.
February 16, 2000.
Review Denied June 2, 2000.
*783 James F. Johnson, under appointment by the Court of Appeal, Los Angeles, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Robert P. Whitlock and Lloyd G. Carter, Deputy Attorneys General, for Plaintiff and Respondent.

*782 OPINION
ARDAIZ, P.J.
By information filed in Kings County Superior Court, appellant Cicely Keshawn Reed and her codefendant Adam G. Tapia, were jointly charged with the first-degree robbery of Georgina Johnson in an inhabited dwelling house (Pen.Code, § 211); the assault with a semiautomatic firearm of Willie Wills (Pen.Code, § 245, subd. (b)); the assault with a firearm of Georgina Johnson (Pen.Code, § 245, subd. (a)(2)); and the felony false imprisonment of Georgina Johnson, Willie Wills, and Cassandra Kelley (Pen.Code, §§ 236, 237).[1] It was further alleged that each of these offenses was committed by a principal who was armed with a firearm within the meaning of section 12022, subdivision (a)(1).
Appellant entered not guilty pleas to the substantive offenses and denied each of the enhancements.
Following a jury trial, appellant was convicted of the first-degree robbery of Georgina Johnson, the assault with a semiautomatic weapon of Willie Wills, and the false imprisonment of all three named victims. It also found the arming enhancements associated with each of these counts to be true. The jury acquitted appellant of the assault with a firearm against Georgina Johnson.
Imposition of judgment took place on April 9, 1998. Pursuant to a stipulation between the parties, appellant was denied probation and ordered to serve the upper term of nine years on the robbery charge plus a one-year term for its associated arming enhancement, for a total term of ten years. The court imposed a six-year concurrent term on the assault with semiautomatic weapon conviction and 3 two-year concurrent terms on the false imprisonment convictions.
Notice of appeal was timely filed on April 17, 1998. Appellant raises only one issue on appeal; namely, whether sufficient evidence exists to convict her of both robbery and felony false imprisonment where, in her view, the only force employed in the commission of the false imprisonment was incidental to the robbery. She therefore argues that the rationale of the substantial movement requirement for simple kidnapping should apply for purposes of determining whether false imprisonment may be found where the false imprisonment is incidental to the robbery. We find the rationale for the kidnapping rule to be different, and the evidence to be sufficient and, accordingly, will affirm the judgment.

FACTS[2]
In the evening hours of October 13, 1997, Cassandra Kelly and Willie Wills were visiting their friend Georgina Johnson in the latter's apartment. Around 9:30 *784 or 10:00 p.m., they heard a knock on the door and Georgina asked who was there. When no one answered, Willie, who had severely limited vision, opened the door in time to see three people running through an alleyway. Willie was still standing in the doorway when, a few minutes later, three persons burst through the door and pushed him aside.
The first person was armed with a handgun and, in an unnaturally deep voice, told the apartment occupants to get on the ground. The second intruder went straight to the lamp and broke it, which plunged the room into darkness, while the third person stood guard by the door.
Before the lights went out, Cassandra and Georgina were able to see that all three intruders were dressed in baggy, dark clothing. At least one of them was African-American. Two, perhaps three, of them wore pantyhose over their heads which "smooshed" their faces and made it difficult to identify them. The witnesses gave conflicting testimony as to whether they were wearing beanie caps or ski masks.
As the intruders entered the apartment, Willie yelled to the person with the gun, "Tiki, stop playing []" or "Tiki, why are you doing this." The gunman, who was speaking in a lowered tone as if to disguise his true voice, said something like, "This is no mother fuckin' Tiki."
The person with the gun put it against Georgina's head and asked where she kept her purse. Georgina, feeling like "she was dead," replied that she did not carry a purse and did not have anything. At this point one of the robbers ordered Georgina to remove her clothing but she ignored his directive. The robbers then went through her pockets and found some food stamps.
At one point, one of the robbers left the front room. The victims could hear him walking down the hall and opening the hall closet where Georgina kept her purse that contained more than $200 in food stamps and "a whole lot of change." The closet door could then be heard closing.
Willie tried to get hold of the pistol but the gunman used it to strike him in the head. The robber by the door asked who Willie was and said, "Let's smoke this nigger."
The gunman then put the gun against Cassandra's cheek and asked her identity. Even though Cassandra thought the robbers were going to kill her, she did not answer the question and instead told the gunman she had no money.
About this time, one of the robbers said, "Let's get back to the No." Cassandra took this to mean Fresno, as she had heard the expression used that way previously. The robbers then left.
With them gone, Georgina discovered her purse and its contents were missing. Cassandra and Georgina were also able to see the cut over Willie's eye that was presumably inflicted during his struggle with one of the robbers.
The foregoing facts, in combination with those developed during the ensuing investigation, resulted in appellant, Adam Tapia and Latiki T. being identified as the robbers.

DISCUSSION
Appellant has framed her sole contention on appeal as a challenge to the sufficiency of the evidence to convict her of robbery and felony false imprisonment where both offenses were simultaneously committed. Yet, in advancing this argument, she claims the restriction of the victims' movement was incidental to, and had no separate purpose apart from, the robbery. She relies on our high court's earlier kidnapping cases to advance her contention that movement of a victim done *785 solely to accomplish the robbery cannot support convictions for both robbery and felony false imprisonment. She also asks us to superimpose the substantial movement requirement for simple kidnapping onto the crime of false imprisonment.
Respondent believes the convictions for armed robbery and false imprisonment were proper given the facts of this case. We agree.
When faced with a claim of insufficiency of evidence:
"[O]ur role on appeal is a limited one. `The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]
"`Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]'" (People v. Ochoa (1993) 6 Cal.4th 1199, 1206, 26 Cal.Rptr.2d 23, 864 P.2d 103, quoting People v. Jones (1990) 51 Cal.3d 294, 314, 270 Cal.Rptr. 611, 792 P.2d 643.)
We turn then to the definition of the offense charged in this case. "False imprisonment is the unlawful violation of the personal liberty of another." (§ 236; accord People v. Fosselman (1983) 33 Cal.3d 572, 579, 189 Cal.Rptr. 855, 659 P.2d 1144; People v. Von Villas (1992) 10 Cal.App.4th 201, 255, 13 Cal.Rptr.2d 62 (Von Villas).) In this context, "`[personal liberty'" is violated when "the victim is `compelled to remain where he does not wish to remain, or to go where he does not wish to go.'" (Von Villas, supra, 10 Cal. App.4th at p. 255, 13 Cal.Rptr.2d 62, quoting People v. Haney (1977) 75 Cal.App.3d 308, 313, 142 Cal.Rptr. 186; accord People v. Agnew (1940) 16 Cal.2d 655, 659-660, 107 P.2d 601; People v. Bamba (1997) 58 Cal.App.4th 1113,1121, 68 Cal.Rptr.2d 450; People v. Fernandez (1994) 26 Cal.App.4th 710, 718, 31 Cal.Rptr.2d 677.) It is the restraint of a person's freedom of movement that is at the heart of the offense of false imprisonment embodied in section 237. (People v. Bamba, supra, 58 Cal. App.4th at p. 1121, 68 Cal.Rptr.2d 450.) "`"The wrong may be committed by acts or by words, or both, and by merely operating upon the will of the individual or by personal violence, or both...."'" (People v. Zilbauer (1955) 44 Cal.2d 43, 51, 279 P.2d 534, quoting People v. Agnew, supra, 16 Cal.2d at p. 659, 107 P.2d 601, quoting 22 Am.Jur.2d Damages, § 359, p. 405.)
The offense becomes felonious when it is "effected by violence, menace, fraud, or deceit ...."(§ 237; accord People v. Straight (1991) 230 Cal.App.3d 1372, 1374, 282 Cal.Rptr. 10.) "`Violence' ... means the `"the exercise of physical force used to restrain over and above the force reasonably necessary to effect such restraint.'"" (People v. Matian (1995) 35 Cal.App.4th 480, 484, 41 Cal.Rptr.2d 459, quoting People v. Babich (1993) 14 Cal. App.4th 801, 806, 18 Cal.Rptr.2d 60, quoting CALJIC No. 9.60.) "Menace" is defined as "`"a threat of harm express or implied by word or act."'" (People v. Matian, supra, 35 Cal.App.4th at p. 484, 41 Cal.Rptr.2d 459.)
Here, the evidence is clearly sufficient to support all three felony false *786 imprisonment convictions. All three victims were directed, at gunpoint, to get down and stay down on the floor. At various times during the robbery, the gun was placed against each woman's head and used to pistol whip Willie. The women both believed they were going to be killed by their intruders.
Appellant does not believe we can base her false imprisonment convictions on the implied or actual use of force employed in this case since it was "incidental" to the robbery. She is mistaken.
Appellant erroneously believes she cannot be convicted of two offenses based on the same conduct.[3] Section 954 expressly provides otherwise. As pertinent, it states:
"An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts.... The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged, and each offense of which the defendant is convicted must be stated in the verdict...." (See also People v. Tideman (1962) 57 Cal.2d 574, 21 Cal.Rptr. 207, 370 P.2d 1007 [no double jeopardy violation where defendant tried in one action for different offenses or for different statements of same offense].)
One long-standing exception to this rule applies to necessarily included lesser offenses. (People v. Ortega (1998) 19 Cal.4th 686, 692, 80 Cal.Rptr.2d 489, 968 P.2d 48; People v. Pearson (1986) 42 Cal.3d 351, 355, 228 Cal.Rptr. 509, 721 P.2d 595; People v. Moran (1970) 1 Cal.3d 755, 763, 83 Cal.Rptr. 411, 463 P.2d 763; People v. Greer (1947) 30 Cal.2d 589, 602, 184 P.2d 512 [disapproved on other grounds in People v. Fields (1996) 13 Cal.4th 289, 308, fn. 6, 52 Cal.Rptr.2d 282, 914 P.2d 832]; People v. Garcia (1995) 41 Cal.App.4th 1832, 1851, 50 Cal.Rptr.2d 127.) "`"The test in this state of a necessarily included offense is simply that where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense."'" (People v. Ortega, supra, 19 Cal.4th at p. 692, 80 Cal.Rptr.2d 489, 968 P.2d 48, quoting People v. Pearson, supra, 42 Cal.3d at p. 355, 228 Cal.Rptr. 509, 721 P.2d 595, quoting People v. Greer, supra, 30 Cal.2d at p. 596, 184 P.2d 512.) In making this determination, one looks to the elements of the offenses not the evidence regarding the commission of the offenses. (People v. Marshall (1957) 48 Cal.2d 394, 405, 309 P.2d 456; People v. Garcia, supra, 41 Cal.App.4th at p. 1852, 50 Cal.Rptr.2d 127.)
Examination of the statutory elements of robbery and false imprisonment confirms they are different offenses even though they may, on occasion, share some elements (i.e., the use of force or fear of harm to commit the offenses). (Compare § 211 with §§ 236, 237.) As observed in People v. Von Villas, supra, 10 Cal. App.4th at page 256, 13 Cal.Rptr.2d 62:
"Von Villas seeks to equate the right of freedom of movement or mobility with the right to retain personal belongings, merely because both liberties were defiled within the same criminal incident. The assertion that both crimes involve a violation of personal liberty ignores the specific freedoms the two crimes were designed to protect.... A robbery can be committed without subjecting a person to false imprisonment. ... [T]here *787 is simply nothing inherent in robbery which necessarily requires the offense of false imprisonment to also be accomplished. Examples of such situations may include victims of `purse snatchings,' or victims of `muggings' who immediately surrender their belongings, and therefore are not subject to any physical constraints."
Since false imprisonment is not a lesser included offense of robbery (People v. Von Villas, supra, 10 Cal.App.4th at p. 256, 13 Cal.Rptr.2d 62; see People v. Tufunga (1999) 21 Cal.4th 935, 949, 90 Cal.Rptr.2d 143, 987 P.2d 168 [same conclusion but stated in dicta]), it follows that this exception to the general rule allowing for multiple convictions has no application to this case.
Appellant tries to get around this conclusion by asking us to adopt the approach taken by our high court in a number of kidnapping cases. Having reviewed those cases, we decline the invitation.
The rule, upon which appellant relies, was first announced in Cotton v. Superior Court (1961) 56 Cal.2d 459, 15 Cal.Rptr. 65, 364 P.2d 241 (Cotton). There, defendant picketing union members, armed with a knife, sticks, and stones, chased one person into a building before then ordering him to leave; pushed another person toward the front gate of the camp; and seized a third by the shirt, pulled him out of a washroom and dragged him 15 feet before throwing him to the ground and kicking him in the back and legs. (Id. at pp. 463-464, 15 Cal.Rptr. 65, 364 P.2d 241.) The defendants were subsequently charged with three counts of simple kidnapping (§ 207) based on these actions. (Id. at p. 463, 15 Cal.Rptr. 65, 364 P.2d 241.)
The high court noted that section 207 required the victim to be taken, arrested, or carried from "one part of the county to another." (Cotton, supra, 56 Cal.2d at p. 463, 15 Cal.Rptr. 65, 364 P.2d 241.) It concluded the Legislature did not intend for this language to apply to situations such as the one before it where the only movements were those "natural" or "incidental" to a riot or assault. (Id. at p. 464, 15 Cal.Rptr. 65, 364 P.2d 241.) Were it to find otherwise, the court observed, every assault could also be prosecuted under the kidnapping statute so long as the slightest movement was involved. (Id. at p. 465, 15 Cal.Rptr. 65, 364 P.2d 241.)
In People v. Daniels (1969) 71 Cal.2d 1119, 1134, 80 Cal.Rptr. 897, 459 P.2d 225, a section 209 kidnapping for robbery (also known as aggravated kidnapping), the high court "recognized that some brief movements are necessarily incidental to the crime of robbery" and "are not of the scope intended by the Legislature in prescribing the asportation element of [aggravated kidnapping]." (Italics added.) It went on to "hold that the intent of the Legislature in amending Penal Code section 209 in 1951 was to exclude from its reach not only `standstill' robberies [citation] but also those in which the movements of the victim are merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself. [Citation.]" (71 Cal.2d at p. 1139, 80 Cal.Rptr. 897, 459 P.2d 225.) In reaching this decision, the Daniels court cited to authorities that urged limiting the scope of the kidnapping statute, with its substantially more severe penal consequences (i.e., death or life with or without the possibility of parole), to true kidnapping cases and exclude from its coverage those crimes such as robbery, rape, or assault in which some minor confinement or asportation occurs as a subsidiary incident. (Id. at pp. 1137-1138, 80 Cal. Rptr. 897, 459 P.2d 225.) It concluded that such minimal movement could not reasonably be found to constitute "asportation" within the meaning of the aggravated *788 kidnapping statute. (Id. at p. 1140, 80 Cal.Rptr. 897, 459 P.2d 225.)
Then, in People v. Stanworth (1974) 11 Cal.3d 588, 114 Cal.Rptr. 250, 522 P.2d 1058, also cited by appellant, our Supreme Court held that the rule announced in Daniels had no application to section 207 convictions for simple kidnapping. (People v. Stanworth, supra, 11 Cal.3d at p. 598, 114 Cal.Rptr. 250, 522 P.2d 1058.) It reasoned that:
"... the `movement' factor of the Daniels rule is uniquely suited to section 209 and not to section 207. The rule concerns one type of kidnapping described in section 209 which, by definition, involves the underlying offense of robbery.[ ] In contrast, kidnapping, as defined by section 207, may occur in the absence of another crime. Thus where only simple kidnapping is involved, it is clear that the victim's movements cannot be evaluated in the light of a standard which makes reference to the commission of another crime. Coincidentally, Cotton did involve related charges of rioting and assault. Because the victim's movements were not substantial, we concluded that those movements were `only incidental to assault and rioting.' (Cotton, 56 Cal.2d at p. 464, 15 Cal.Rptr. 65, 364 P.2d 241.) Nevertheless, the central thrust of Cotton is contained in our reasoning that the Legislature did not intend to apply criminal sanctions where the `slightest movement' is involved. (Cotton, 56 Cal.2d at p. 465, 15 Cal.Rptr. 65, 364 P.2d 241.)" (People v. Stanworth, supra, 11 Cal.3d at p. 600, 114 Cal.Rptr. 250, 522 P.2d 1058, italics added.)
The Stanworth court went on to impose a requirement that the victim's movement must be "more than slight ... or trivial [citation], they must be substantial in character to constitute kidnapping under section 207." (People v. Stanworth, supra, 11 Cal.3d at p. 601, 114 Cal.Rptr. 250, 522 P.2d 1058.) The court then applied that standard to uphold the four simple kidnapping convictions before it despite the fact that the asportations in those cases resulted in the associated crimes of oral copulation, rape and murder. (Id. at pp. 601-604, 114 Cal.Rptr. 250, 522 P.2d 1058.)
The law pertaining to kidnapping continued to evolve. The high court did, however, continue to examine both the definition of the offense and its punishment, when ascertaining which asportation standard to apply in a given case. (People v. Rayford (1994) 9 Cal.4th 1, 20-22, 36 Cal.Rptr.2d 317, 884 P.2d 1369.) When speaking on the subject even more recently, our high court voiced its continuing approval of the "substantial in character" asportation standard for simple kidnapping but declared that the fact finder would no longer be limited to the distance a victim is moved and could now consider the "totality of the circumstances" including whether the movement was incidental to the commission of an associated offense. (People v. Martinez (1999) 20 Cal.4th 225, 236-237, 83 Cal.Rptr.2d 533, 973 P.2d 512.)
What appellant has completely overlooked in advancing her claim is that our high court has considered the incidental nature of the victim's movement only as it pertains to the asportation element of kidnapping. While the definition of that element has changed considerably over time, the above-referenced cases show that kidnapping, be it simple or aggravated, requires a degree of asportation not found in the definition of false imprisonment.[4] Indeed, false imprisonment can occur with any movement or no movement at all. Accordingly, the reasoning employed in *789 the high court's kidnapping cases has no application here.
While appellant's argument holds some appeal, it is not for us to add elements to a statutorily defined crime. That task is best left to the Legislature.

DISPOSITION
The judgment is affirmed.
VARTABEDIAN, J., and LEVY, J., concur.
NOTES
[1] All statutory references are to the Penal Code unless otherwise indicated.
[2] The statement that follows has been abbreviated due to the limited nature of the issues presented on appeal.
[3] This argument must be distinguished from the related issue of when a defendant can receive multiple sentences based on a single act or course of conduct. (See § 654.)
[4] For this reason, we disagree with the court's conclusion in People v. Moreland (1970) 5 Cal.App.3d 588, 594-595, 85 Cal.Rptr. 215, that the reasoning of Daniels applies to false imprisonment as well.