Filed 1/22/16  P. v. Diaz CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

LUIS RAUL DIAZ,

    Defendant and Appellant.

E062324

(Super.Ct.No. INF1302087)

OPINION

APPEAL from the Superior Court of Riverside County.  Harold W. Hopp, Judge. Affirmed.

Eric S. Multhaup, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., Lise Jacobson and Susan Elizabeth Miller, Deputy Attorneys General, for Plaintiff and Respondent.

1

Andrew De Los Santos suspected that Shane Ayala (the victim) was the perpetrator of a robbery at De Los Santos's condominium during which De Los Santos's girlfriend was tied up. De Los Santos beat the victim. Thereafter, he walked the victim at gunpoint to a waiting car driven by defendant and appellant Luis Raul Diaz. Defendant drove De Los Santos and the victim to a remote desert area where De Los Santos shot and killed the victim. They left the body to decompose in the desert; his bones were eventually discovered by hikers.

Defendant was found guilty of first degree felony murder, and the special circumstance of murder committed during the commission of a kidnapping. Defendant makes the following claims on appeal:

1. He was deprived of his federal constitutional rights to due process, effective assistance of counsel, and a fair trial by the trial court's failure to instruct the jury on the lesser included offense of false imprisonment for the predicate offense of kidnapping for felony murder, and the failure to instruct on the lesser included offenses of second degree murder and voluntary manslaughter for the first degree murder charge.

2. He was deprived of his federal constitutional rights to due process and a fair trial by the omission of an element of kidnapping in CALCRIM No. 1215 that was given to the jury.

3. His federal constitutional rights to due process, a fair trial, and effective assistance of counsel were violated by trial counsel's stipulation that he had been convicted of a felony and had served a prior prison term—the trial court erred by denying defendant's motion for new trial based on ineffective assistance of counsel.

2

4. He received ineffective assistance of counsel, and was deprived of his due process and fair trial rights, by his counsel's failure to make timely objections to inadmissible hearsay testimony.

We affirm the judgment in its entirety.

**FACTUAL AND PROCEDURAL HISTORY**

A. <u>PROCEDURAL HISTORY</u>

Defendant was charged in the information with a violation of Penal Code section 187[1] as he "did willfully, unlawfully, and with deliberation, premeditation, and malice aforethought murder [the victim]." Defendant was further charged with the special circumstance that the murder was committed while he was engaged in the commission of kidnapping, in violation of section 207, within the meaning of section 190.2, subdivision (a)(17)(B).[2] Defendant was also charged with having suffered a prior serious felony conviction (§ 667, subd. (a)) and having served a prior prison term (§ 667.5, subd. (b)).

The jury found defendant guilty of first degree murder on the theory of felony murder and found the special circumstance true. After waiving his right to a jury trial, and in a bifurcated court trial, the trial court found that defendant had suffered the prior

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] In addition, he was charged with personally and intentionally discharging a firearm and proximately causing great bodily injury or death of another person within the meaning of section 12022.53, subdivision (d), and personal firearm use within the meaning of section 12022.5, subdivision (a). These allegations were dismissed by the People prior to trial.

3

serious felony conviction within the meaning of section 667, subdivision (a). The People dismissed the prior prison term allegation in the interests of justice.

The trial court sentenced defendant to life without the possibility of parole plus five years for the section 667, subdivision (a) prior.

B.    FACTUAL HISTORY

1.    *DISAPPEARANCE OF THE VICTIM AND DISCOVERY OF HIS SKELETAL REMAINS*

Destiny Ayala was the victim's sister. She last saw the victim in July 2011. She exchanged text messages with him in August 2011. She became concerned in early September when she had not heard from him. She went to his house in Palm Springs but he was not there. She filed a missing person's report with the Palm Springs Police Department.

On December 19, 2011, a Riverside County Sheriff's deputy responded to a call that skeletal remains had been found in the area of Sky Valley. In order to access the area, the deputy had to use a dirt road. The area where the skeletal remains were found was remote, open desert. The remains were scattered, most likely due to animal activity. There were two burn areas near the remains. A melted belt buckle, a fired projectile, a live round of ammunition, and a burned T-shirt were found by the remains.

Sergeant Deborah Gray of the Riverside County Coroner's Office was a forensic anthropologist trained to examine skeletal remains. She was called to the Sky Valley area to examine the skeletal remains. She determined that all the bones found belonged

to one person. The person had been deceased between two weeks and six months. The person was likely male, White or Hispanic, and between 20 to 23 years old.

Riverside County Sheriff's Investigator Martin Alfaro was the lead investigator on the case. Based on DNA identification and dental comparison, it was determined the remains belonged to the victim. An autopsy was performed on the victim's remains. The victim had a semicircular defect in his skull, which was likely the result of a bullet wound.

### 2. *ASHLEY PRIETO'S TESTIMONY*

Ashley Prieto was living in Morongo during the summer of 2011. She knew De Los Santos from high school. After they graduated, Prieto started buying drugs from De Los Santos. She had known the victim since 2010; she had purchased drugs from him. She also knew defendant because he dated her friend, Christina Arthur.

In August 2011, Prieto received a telephone call from the victim. He told her that he was in a car with De Los Santos and defendant on the way to Las Vegas. She was concerned because defendant and De Los Santos were heavily involved in drug sales and the victim was not as heavily involved. The victim went missing.

Several months later, in approximately October, Prieto was in Palm Springs with De Los Santos. She and De Los Santos were smoking marijuana. She asked him what had happened to the victim. De Los Santos told her that he believed the victim had broken into his house and tied his girlfriend up during a robbery. As a result, De Los Santos told Prieto that he took the victim out to the desert and shot him in the head. De Los Santos told her that the victim had confessed to being involved in the robbery of De

5

Los Santos's girlfriend so he deserved to be killed. Prieto felt that De Los Santos was proud to have killed the victim.

On December 28, 2011, Investigator Alfaro interviewed Prieto. Prieto told him that De Los Santos had told her he shot the victim in the head. The information that the victim had been shot in the head had not been released to the public. Prieto would not have known the information from another source.

### 3. *WALDO BARKER'S TESTIMONY*

Waldo Barker[3] was arrested during an automobile theft investigation; he told the arresting officer that he knew about a murder involving defendant and De Los Santos. Investigator Alfaro interviewed him. Barker was made no promises of leniency in the automobile theft case.[4]

Barker met De Los Santos in 2011. Barker was a mechanic and he worked on De Los Santos's car. Barker and De Los Santos used drugs together. Barker had met defendant through De Los Santos.

Sometime in August 2011, around 4:00 a.m., Barker went to a condominium in Cathedral City, where De Los Santos lived, to eat and get "high." Defendant was with De Los Santos. While Barker was at the house, the victim called De Los Santos looking

---

[3] Barker was unavailable for trial because he invoked his Fifth Amendment right not to testify; his preliminary hearing testimony was read to the jury.

[4] Barker had a 2004 conviction for burglary, a conviction for automobile theft, and a conviction for possession of methamphetamine.

6

for heroin. Around 5:30 a.m., De Los Santos left the house to get the heroin and Barker went home. Barker was unsure if defendant also went home.

De Los Santos called Barker around 7:30 a.m. and told him to come back to the condominium. When Barker got to the condominium, he saw that the front door jamb had been broken and the place was ransacked. De Los Santos was upset. He had a handgun in his waistband. De Los Santos asked Barker where he had been since he had left the house. De Los Santos told Barker that he had been robbed. Barker advised De Los Santos that he had been working; De Los Santos told him that he believed him. He said he knew who had done it and that he already had him.

De Los Santos took Barker to his bedroom. The room was ransacked. In a nearby bathroom, he saw the victim; the victim had a split lip and a black eye. The victim repeatedly told De Los Santos that he had not committed the burglary. De Los Santos had Barker sit with the victim while he went to do something. The victim had blood on his shirt.

De Los Santos returned and told the victim to put on a hooded sweatshirt, a hat and sunglasses. He told the victim that he was going to take him home. The victim continued to plead with De Los Santos, advising him he had not committed the burglary. De Los Santos told Barker to watch the house for him because the front door was broken.

De Los Santos walked the victim out of the house while holding the handgun. De Los Santos told the victim not to do anything stupid and not be loud, and "everything will be cool." De Los Santos gave Barker a look that Barker interpreted "like a wink," that he was not going to take the victim home.

De Los Santos and the victim left in a green sedan that was driven by defendant. Defendant had been outside waiting in the car; De Los Santos and the victim got in the backseat.

Barker observed spots of blood on the hallway floor. De Los Santos called Barker and asked him to try to clean up the blood. Barker tried to clean up the blood but was unsuccessful. Barker went home around 8:45 a.m. De Los Santos was still not home.

Barker saw De Los Santos and defendant several days later. Barker told defendant that the victim's girlfriend was worried that she had not heard from the victim. Defendant told Barker that they had driven the victim out to the desert in Sky Valley. The victim kept asking De Los Santos not to hurt him. Defendant claimed he tried to convince De Los Santos not to hurt the victim, and to convince the victim to tell the truth about the burglary. Defendant claimed that De Los Santos "snapped." Defendant walked away and De Los Santos shot the victim. De Los Santos told Barker that the victim had "told more truth than he should have" and had admitted his involvement in the burglary. De Los Santos admitted to Barker that he had lost it and shot the victim. They left the victim's body tied to a post.

Barker directed Investigator Alfaro to the condominium where De Los Santos had lived. De Los Santos's no longer lived in the condominium. The front door jamb showed signs of damage. There were bleach stains on the carpet. Chemical tests were done on some of the walls and carpet, and were presumptive for blood. During a search of De Los Santos's car, police found shotgun shells. Police also found a loaded rifle, and .40-caliber ammunition in De Los Santos's new apartment.

### 4. *CHRISTINA ARTHUR'S TESTIMONY*

Arthur was defendant's girlfriend in 2010 and 2011. She and defendant used drugs when they were dating, including heroin and methamphetamine. Arthur and defendant moved into an apartment together in Palm Springs. The victim would come to the apartment approximately once each week. They would all do drugs together. Arthur met De Los Santos in high school; he was her drug supplier. In 2011, defendant drove several different cars, including his mother's Toyota sedan. At the time of the victim's murder, defendant had been working with De Los Santos selling drugs for him.

The last time Arthur saw the victim was in August 2011; she became concerned when she had not heard from him in a week. Arthur asked defendant whether he had talked to the victim recently. Defendant told her he had not talked to the victim and that she was not to mention the victim any more. She thought this was strange because they had been friends. Arthur heard rumors about what had happened to the victim. Arthur asked defendant if he had killed the victim, and he claimed he had nothing to do with it. In a pretrial interview, Arthur had claimed that when she asked defendant about the victim, he told her to "stay the fuck out" of the disappearance and was adamant that she not mention the victim's name.

During the investigation, Detective Alfaro discovered that defendant was in prison. No search of defendant's home could be made because of his incarceration. The parties stipulated that defendant pleaded guilty in Riverside County on September 30, 2011, to one felony count of possession for sale of a controlled substance. He was sentenced to two years eight months in prison.

9

**DISCUSSION**

A.    LESSER INCLUDED OFFENSE INSTRUCTIONS

Defendant insists that he received ineffective assistance of counsel based on his counsel's failure to request that the trial court instruct the jury on the lesser included offense of false imprisonment for the predicate offense of kidnapping for felony murder. He additionally claims that his rights to due process and a fair trial were violated by the trial court's failure to instruct the jury on the lesser included offenses of second degree murder and manslaughter for the first degree murder charge.

1.    *INSTRUCTIONS*

Here, the jury was instructed only on felony murder and that defendant aided and abetted the kidnapping, which resulted in the murder of the victim. The jury was instructed that in order to find defendant guilty, it had to find that he "committed or aided and abetted kidnapping," that he "intended to commit or intended to aid and abet the perpetrator in committing kidnapping," and that even if he "did not personally commit kidnapping, [t]hen a perpetrator, whom the defendant was aiding and abetting, personally committed kidnapping, and while committing kidnapping, the perpetrator caused the death of another person." The jury was instructed, "the defendant must have intended to or aided and abetted the felony of kidnapping before or at the time that he caused the death. It's not required the defendant be present when the death occurs."

10

The jury was also instructed on the special circumstance intent requirement for an accomplice when considering the special circumstance of kidnapping. The jury was advised, "If you decide the defendant is guilty of first degree murder but was not the actual killer, then when you consider the special circumstance of kidnapping, you must also decide whether the defendant acted either with intent to kill or with reckless indifference to human life." The jury was instructed that in order to find the special circumstance true, it had to find as follows: "1. That the defendant's participation in the crime began before or during the killing; [¶] 2. The defendant was a major participant in the crime; and [¶] 3. When the defendant participated in the crime, he acted with reckless indifference to human life." The jury was advised as to the special circumstance that defendant either aided and abetted or committing the kidnapping, that a perpetrator did an act that caused the death of another person, and that the act causing death and the kidnapping were part of one continuous transaction.

The jury was also instructed on kidnapping as follows: "The Information alleges that the murder charged in Count 1 occurred during the commission of kidnapping or attempted kidnap[ping]. [¶] To prove that the defendant is guilty of this allegation, the People must prove that: [¶] 1. The defendant took, held or detained another person by using force or instilling reasonable fear; [¶] 2. Using that force or fear, the defendant moved the other person a substantial distance; and [¶] 3. The other person did not consent to the movement." No lesser offense instructions were given to the jury.

11

## 2. *FALSE IMPRISONMENT*

"'In criminal cases, even absent a request, the trial court must instruct on general principles of law relevant to the issues raised by the evidence. [Citation.] This obligation includes giving instructions on lesser included offenses when the evidence raises a question whether all the elements of the charged offense were present, but not when there is no evidence the offense was less than that charged. [Citation.] The trial court must so instruct even when, as a matter of trial tactics, a defendant not only fails to request the instruction, but expressly objects to its being given.'" (*People v. Moye* (2009) 47 Cal.4th 537, 548.)

"To justify a lesser included offense instruction, the evidence supporting the instruction must be substantial—that is, it must be evidence from which a jury composed of reasonable persons could conclude that the facts underlying the particular instruction exist." (*People v. Blair* (2005) 36 Cal.4th 686, 744-745, rejected on other grounds in *People v. Black* (2014) 58 Cal.4th 912.)

Defendant frames his claim on appeal as an ineffective assistance of counsel claim for failing to request the lesser included instruction of false imprisonment for the predicate offense of kidnapping for felony murder. In order to establish ineffective assistance under the Sixth Amendment, a defendant "must demonstrate both deficient performance under an objective standard of professional reasonableness and prejudice under a similarly objective standard of reasonable probability of an adverse effect on the outcome. [Citation.] To establish ineffective assistance under the counsel clause of article I, section 15 of the California Constitution, he must do the same." (*People v.*

12

*Waidla* (2000) 22 Cal.4th 690, 718; see *Strickland v. Washington* (1984) 466 U.S. 668, 687-696; *People v. Ledesma* (1987) 43 Cal.3d 171, 215-218.)

Section 207, subdivision (a), provides a definition of kidnapping as follows: "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping." "False imprisonment is the unlawful violation of the personal liberty of another." (§ 236.)  Personal liberty is violated when the victim is compelled to remain where he does not wish to remain, or to go where he does not wish to go.  (*People v. Reed* (2000) 78 Cal.App.4th 274, 280.)  "It is the restraint of a person's *freedom of movement* that is at the heart of the offense of false imprisonment."  (*Ibid.*)

False imprisonment is a lesser included offense of simple kidnapping.  (*People v. Magana* (1991) 230 Cal.App.3d 1117, 1120-1121.)  Kidnapping "requires a degree of asportation not found in the definition of false imprisonment.  Indeed, false imprisonment can occur with *any* movement or *no* movement at all."  (*People v. Reed*, *supra*, 78 Cal.App.4th at p. 284, fn. omitted.)  Here, there was no evidence the offense committed was less than kidnapping.

Defendant was waiting just outside De Los Santos's condominium in his vehicle. Barker had been summoned to De Los Santos's condominium after the robbery.  It is reasonably deduced that defendant was also summoned by De Los Santos, or if defendant stayed, he was advised to wait in his car.  De Los Santos walked the victim to the car at gunpoint, after clearly beating him up.  Once inside the car, defendant drove De Los

13

Santos and the victim to a remote part of the desert. Based on this evidence alone, it was clear that defendant aided and abetted a kidnapping. There was no evidence of false imprisonment, as the victim was driven, against his will, to a remote area of the desert.

Defendant contends that based on "pervasive ambiguity" about his knowledge of and participation in the victim's kidnapping, an instruction on false imprisonment was required. He specifically argues that the victim consented to going in the car with him and De Los Santos. He points to the evidence that De Los Santos assured the victim that he was going to take him home and that the victim would be okay as long as he stayed quiet. No reasonable person would consent to going with a person who he had just been beat by, and who was holding a gun.

Further, defendant argues that the jury could have reasonably determined that defendant believed the victim had voluntarily gotten into the car with De Los Santos. Such argument is completely without any merit. Defendant was waiting outside De Los Santos's apartment in his car. De Los Santos then walked the victim to the car holding a gun. Thereafter, defendant drove them to a remote desert where De Los Santos shot the victim in the head. The only reasonable determination was a kidnapping.

Defendant points to the evidence that he was trying to convince the victim to tell the truth during the ride to the desert, and that he was telling De Los Santos not to hurt the victim, as evidence that the lesser offense of false imprisonment should have been given to the jury. This showed that the victim was "a voluntary participant in the discussion." To the contrary, this evidence showed that defendant was aware that De Los

14

Santos was going to hurt the victim. Despite this knowledge, he continued to drive them to a remote desert area.

Finally, defendant claims the jury could have found that there was a reasonable doubt whether defendant knew that the victim was kidnapped at the outset of the drive, and could view the evidence as showing defendant aided and abetted false imprisonment when they got out of the car in the desert. As set forth at length *ante*, the only reasonable interpretation of the evidence was that defendant was involved in the kidnapping and that no reasonable person would conclude that the victim consented to go in the car with De Los Santos and defendant. No instruction on false imprisonment was supported by the evidence. As such, defendant did not receive ineffective assistance of counsel by his counsel failing to request the instruction.

### 3. *INSTRUCTION WITH LESSER OFFENSE INSTRUCTIONS FOR MURDER*

It is without dispute that defendant was charged with first degree murder. It is well established that the crimes of second degree murder and voluntary manslaughter are lesser included offenses of first degree murder. (*People v. Seaton* (2001) 26 Cal.4th 598, 672 [second degree murder]; *People v. Randle* (2005) 35 Cal.4th 987, 994, overruled on other grounds in *People v. Sarun Chun* (2009) 45 Cal.4th 1172 [manslaughter].) Second degree murder is "an unpremeditated killing with malice aforethought." (*Seaton*, at p. 672.) Voluntary manslaughter is an intentional, unlawful killing committed without malice aforethought. (*People v. Rios* (2000) 23 Cal.4th 450, 458.) Defendant insists that since he was charged with first degree murder in the information, the trial court should

15

have sua sponte instructed the jury on the lesser offenses of first degree murder despite the People proceeding only a felony murder theory.

Here, we need not decide whether the trial court had a sua sponte duty to instruct the jury on the lesser offense instructions of second degree murder and manslaughter, as the failure to instruct the jury with these lesser offenses was clearly harmless.

"The erroneous failure to instruct on a lesser included offense generally is subject to harmless error review under the standard of *People v. Watson* (1956) 46 Cal.2d 818, at pages 836-837. Reversal is required only if it is reasonably probable the jury would have returned a different verdict absent the error or errors complained of." (*People v. Rogers* (2006) 39 Cal.4th 826, 868, fn. omitted.) "In applying this test, we are instructed to 'focus[] not on what a reasonable jury could do, but what such a jury is likely to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so relatively strong, and the evidence supporting a different outcome is so comparatively weak, that there is no reasonable probability the error of which the defendant complains affected the result.'" (*People v. Anderson* (2006) 141 Cal.App.4th 430, 450.) "When the evidence points indisputedly to a homicide committed in the course of a felony . . . the court is justified in advising the jury that the defendant is either innocent or guilty of first degree murder." (*People v. Turner* (1984) 37 Cal.3d 302, 327, overruled on other grounds in *People v. Anderson* (1987) 43 Cal.3d 1104, 1115.)

16

Here, the evidence that defendant aided and abetted the kidnapping of the victim, and that the murder of the victim was committed during the course of the kidnapping, was overwhelming. Defendant was waiting in a car right outside De Los Santos's apartment. De Los Santos had called Barker back to his apartment after the robbery at De Los Santos's condominium, and the jury could reasonably conclude that De Los Santos also called defendant or had instructed defendant to wait in his car. De Los Santos walked the victim to defendant's waiting car while holding a handgun. Defendant told Barker he drove the victim and De Los Santos out to the desert. Although defendant stated that he tried to convince De Los Santos not to hurt the victim, defendant continued to drive them out to the desert. Defendant never indicated that De Los Santos forced him to keep driving. Further, defendant clearly knew De Los Santos intended to harm the victim, yet he continued to drive them out to a remote area of the desert.

Once in the desert, they exited the car and De Los Santos shot the victim in the head. Defendant actively participated in the kidnapping of the victim. The evidence of felony murder was overwhelming. Defendant's only defense was that he was not involved at all—not that he did not believe De Los Santos kidnapped the victim. There was strong evidence presented that defendant was involved, including Prieto's and Barker's testimonies, which were corroborated by other evidence.

Defendant relies on this court's case *People v. Campbell* (2015) 233 Cal.App.4th 148 (Fourth Dist., Div. Two) (*Campbell*) to support his claim that the failure to instruct on the lesser offense of second degree murder and voluntary manslaughter was prejudicial. In *Campbell*, we concluded that the jury should have been instructed on the

lesser offenses of second degree murder and voluntary manslaughter for first degree murder (prosecuted under the theory of felony murder only) based on a robbery, because there was substantial evidence from which the jury could have concluded that the defendant (who was the shooter) did not aid and abet the robbery that led to the shooting. (*Id.* at pp. 163-165.) We found the instructional error was prejudicial.

First, we rejected the argument that the fact that the jury found the defendant guilty of the special circumstance of murder during the commission of robbery rendered the instructional error harmless. We found that when the jury is only instructed on felony murder, the additional finding of the special circumstance is compelled by that decision. Further, that "the special circumstance finding may indicate nothing more than that the jury did not want to acquit the defendant of murder, not that they found the killing was first degree felony murder." (*Campbell*, *supra*, 233 Cal.App.4th at p. 168.)

Several California Supreme Court cases were then examined, wherein the Supreme Court found the failure to instruct with the lesser offenses of murder, rather than only on felony murder, was harmless. (*Campbell*, *supra*, 233 Cal.App.4th at pp. 167-172.) We discerned the following from these cases: "It is clear from our examination of the cited cases that the rule . . . cannot be applied without consideration of the factual context and the other instructions given to the jury. In each case, the jury was offered alternative grounds for finding first degree murder. Significantly, it was patently clear from the facts in each case that an underlying felony had been committed by the perpetrator of the murder. In three of the cases the only defense raised was that it was not the defendant who committed the crimes." (*Id*. at p. 172.)

18

While here the jury was not given an alternative theory to convict defendant of first degree murder, it was clear from the evidence that De Los Santos kidnapped the victim and that defendant aided and abetted the kidnapping by driving them out to the remote desert. Finally, there was absolutely no evidence—other than defendant's speculation on appeal—that he believed the victim consented to driving to the remote desert area. Moreover, like the cases examined by this court in *Campbell*, defendant's only defense was that he was not involved in any way. Any conceivable errors occasioned by the trial court's failure to sua sponte instruct the jury with the lesser offenses of voluntary manslaughter or second degree murder was clearly harmless.

B.      CALCRIM NO. 1215—KIDNAPPING INSTRUCTION

Defendant contends that his due process rights and right to a fair trial were implicated due to the failure of the trial court to completely instruct the jury on kidnapping.

Defendant did not object to the trial court's giving of CALCRIM No. 1215. We set forth the kidnapping instruction, in part, *ante*. The jury was further instructed on consent to kidnapping that, "In order to consent, a person must act freely and voluntarily and know the nature of the act." Further, "The defendant is not guilty of kidnapping if the other person consented to go with the defendant. [¶] The other person had consented if he: [¶] 1. Freely and voluntarily agreed to go with or be moved by the defendant; [¶] 2. Was aware of the movement; and [¶] 3. Had sufficient maturity and understanding to choose to go with the defendant. [¶] The People have the burden of proving beyond a reasonable doubt that the other person did not consent to go with the defendant. If the

19

People have not met this burden, you must find the defendant not guilty of this crime—or for the special circumstances not true."

The trial court did not give the bracketed part of CALCRIM No. 1215 that provides as follows: "The defendant did not actually and reasonably believe that the other person consented to the movement." The instruction further provides a definition of good faith belief in consent, which was not given to the jury as follows: "The People have the burden of proving beyond a reasonable doubt that the defendant did not reasonably and actually believe that the other person consented to the movement. If the People have not met this burden, you must find the defendant not guilty of this crime."

"A 'criminal defendant is entitled to adequate instructions on the defense theory of the case' if supported by the law and evidence." (*People v. Eid* (2010) 187 Cal.App.4th 859, 879.) "[T]he defendant's reasonable good faith belief that the victim has voluntarily consented to accompany him constitutes a complete defense to the charge of kidnapping." (*People v. Isitt* (1976) 55 Cal.App.3d 23, 28.) The trial court has a sua sponte duty to instruct on the defendant's reasonable and actual belief in the victim's consent to go with the defendant, if supported by the evidence. (*People v. Greenberger* (1997) 58 Cal.App.4th 298, 375; see Bench Notes to CALCRIM No. 1215.)

Here, there was no evidence supporting that defendant reasonably and actually believed the victim consented to getting into defendant's car with De Los Santos. The evidence established that De Los Santos had a handgun in his hand while he walked the victim to defendant's waiting car. It was no coincidence that defendant was waiting outside in his car. Clearly, De Los Santos had called or told defendant to wait in his car

20

outside. Defendant told Barker that he drove the victim and De Los Santos to a remote part of the desert. He insisted that during the drive he tried to convince the victim to tell the truth. Defendant also stated that the victim kept asking De Los Santos not to hurt him. Even if the jury believed defendant tried to convince De Los Santos not to hurt the victim, the evidence clearly established the victim was not free to leave the car that was being driven by defendant to the remote desert.

Defendant insists that the victim consented to going with defendant and De Los Santos because they were all friends. He claims they were just "driving around" talking about the robbery at De Los Santo's house, and that defendant did not have any reason to believe that the victim was an unwilling passenger. There is simply nothing in the record to support such claims. Defendant was waiting in a car near De Los Santos's condominium when the victim was taken to the car by gunpoint. The evidence establishes they drove to a remote area in the desert. No reasonable person would consider that the victim consented to this movement. There was no instructional error.

C.     INEFFECTIVE ASSISTANCE OF COUNSEL—STIPULATION TO
       PRIOR FELONY CONVICTION AND PRISON TERM

Defendant contends that his counsel provided ineffective assistance of counsel by stipulating to the fact he had suffered a prior felony conviction of possession for sale of a controlled substance and that he was serving a prison term for the conviction; consequently, the trial court erroneously denied defendant's motion for new trial.

21

## 1.    *ADDITIONAL FACTUAL BACKGROUND*

After defendant was convicted, he retained counsel to file a motion for new trial. Retained counsel complained that trial counsel had stipulated defendant had a prior felony conviction and that defendant had spent time in prison. There was no limiting instruction given. Retained counsel proclaimed, "When I inquired of defense counsel why on Earth the jury would be told, in the guilt phase, that defendant was a felon who went to prison, counsel wrote that 'I have no idea.' When I inquired of the prosecutor, he said it was to explain why the police could not execute a warrant at his residence [which is of course, not a jury question]." Defendant's retained counsel argued it was highly prejudicial for the jury to be advised defendant was a convicted felon. Retained counsel argued that the motion for new trial should be granted on the grounds of ineffective assistance of counsel.

The People filed a response. First, the People noted that the prior serious felony alleged pursuant to section 667, subdivision (a)—a robbery—was bifurcated from the trial proceedings. Further, the People argued the admission of defendant's controlled substance conviction was not prejudicial under *Strickland*, *supra*. There was other testimony regarding defendant's drug use.

The trial court noted that it had read the motion for new trial, the People's opposition and the reply to the opposition. The trial court assumed there was error in allowing the stipulation to a felony conviction. However, the trial court did not see how there was prejudice. The trial court found Barker's testimony was compelling and that it was corroborated. The trial court concluded that there was "overwhelming, powerful

22

evidence of [defendant]'s guilt, and therefore, even evaluating the evidence independently from what the jury found, I find that there is no basis for a new trial."

## 2. *INEFFECTIVE ASSISTANCE OF COUNSEL*

As previously stated, in order to show ineffective assistance of counsel, a defendant must demonstrate both deficient performance under an objective standard of professional reasonableness and prejudice under a similarly objective standard of reasonable probability of an adverse effect on the outcome. (*People v. Waidla*, *supra*, 22 Cal.4th at p. 718.) "If the defendant fails to establish the prejudice component of the ineffectiveness claim, a reviewing court need not determine whether counsel's performance was deficient." (*People v. Hayes* (1990) 52 Cal.3d 577, 608.)

Defendant cannot show prejudice. Here, there was other evidence showing that defendant was a prolific drug user. Prieto testified that defendant was heavily involved in drug sales. Arthur testified that she and defendant used drugs, and that at the time of the victim's disappearance, defendant was working with De Los Santos selling drugs. The fact the jury was advised that defendant had a drug conviction did not give the jury a different impression of him. Moreover, as previously stated, there was ample evidence showing defendant aided and abetted the kidnapping of the victim and that the victim was murdered during the commission of the kidnapping. Defendant has failed to show he received ineffective assistance of counsel.

D.    INEFFECTIVE ASSISTANCE OF COUNSEL—FAILURE TO OBJECT

Defendant contends that his counsel was ineffective for failing to object to Prieto's "prejudicial" hearsay testimony and "other lapses of advocacy." We have set forth the standard of review for ineffective assistance of counsel claims, *ante*.

Defendant fails to acknowledge in his opening brief that prior to trial the People filed a brief seeking to admit statements made to Prieto and Barker by defendant and De Los Santos. The trial court addressed the request prior to trial. Defense counsel argued that the statements were not admissible because they were clearly hearsay; De Los Santos was not a party to the proceeding. Further, his statements to Prieto and Barker were unreliable. The trial court felt that defendant's statements were not testimonial. The trial court found that Evidence Code section 1230 was applicable. The trial court inquired of Prieto prior to her testimony. She advised the trial court that De Los Santos told her that he killed the victim. She did not remember if De Los Santos mentioned defendant being involved. She was allowed to testify.

Defendant's claim in his opening brief, that his counsel failed to object to the hearsay statements, is devoid of merit. A complete review of the record shows that his counsel did object and was certainly not obligated to object during the trial. (*People v. Diaz* (1992) 3 Cal.4th 495, 562 [failure to object to admissible evidence does not constitute ineffective assistance when to do so would have been futile].) Defendant claimed that he was prejudiced by "counsel's failure to object to prejudicial hearsay from Ashley Prieto" but he provides no further argument as to the prejudice he received. Nor does he provide detailed facts to support his claim that his counsel's "other lapses in

24

advocacy" resulted in prejudice.[5]  Once again, defendant has failed to show he received ineffective assistance of counsel.

## DISPOSITION

We affirm the judgment in its entirety.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

J.

We concur:

HOLLENHORST

Acting P. J.

KING

J.

---

[5]  After the People noted in its respondent's brief that defendant's counsel had objected to Prieto's testimony prior to trial, defendant made additional arguments in his reply brief—that counsel had preserved the hearsay objection and that such hearsay was prejudicial.  We will not consider new arguments made in the reply brief, especially in the situation here where the record showed that counsel had objected, e.g., he cannot show good cause for failing to raise a proper claim in his opening brief.  (See *People v. Failla* (2006) 140 Cal.App.4th 1514, 1519, fn. 3 [Fourth Dist., Div. Two].)