Filed 10/28/20  P. v. Cabezas CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>EUSEBIO REZA CABEZAS,<br><br>     Defendant and Appellant. | F078832<br><br>(Super. Ct. No. SF019056A)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

Gordon S. Brownell, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Jennifer Oleksa, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P.J., Detjen, J. and Smith, J.

Defendant Eusebio Reza Cabezas stands convicted of false imprisonment and three sex offenses. On appeal, he contends the evidence was insufficient for the jury to find that he effected the false imprisonment by violence or menace. We affirm.

## PROCEDURAL SUMMARY

On January 19, 2018,[1] the Kern County District Attorney charged defendant with committing a lewd and lascivious act with a child more than 10 years younger than defendant (Pen. Code, § 288, subds. (a)(1), (c)(1));[2] count 1), annoying or molesting a minor (§ 647.6, subd. (a)(1); count 2), false imprisonment by violence or menace (§§ 236, 237, subd. (a); count 3), committing a lewd and lascivious act with a child under the age of 14 years (§ 288, subd. (a); count 4), sexual battery (§ 243.4, subd. (e)(1); count 5), and attempted sexual battery (§§ 664, 243.4, subd. (e)(1); count 6).

On August 22, the court dismissed counts 2 and 6 on the prosecutor's motion.

On August 27, the jury found defendant guilty of counts 1, 3, 4, and 5.

On January 23, 2019, the trial court sentenced defendant to seven years four months in prison as follows: on count 4, the middle term of six years; on both counts 1 and 3, eight consecutive months; and on count 5, 180 concurrent days in jail.

On January 31, 2019, defendant filed a notice of appeal.

## FACTUAL SUMMARY[3]

**Prosecutor's Case**

Doe was born on December 29, 1999. She had been close friends with defendant's daughter, Maria, since both were young children. She spent time with Maria

---

[1] All further dates refer to the year 2018 unless otherwise stated.

[2] All further statutory references are to the Penal Code.

[3] Defendant was convicted of offenses against multiple victims. Because defendant only challenges his conviction on count 3, felony false imprisonment of Jane Doe Number 1 (Doe), we limit the factual summary to facts related to defendant's crimes against Doe.

at defendant's house and spent the night at defendant's house at least twice. When Doe was about 13 years old, she was alone with defendant and he placed and left his hand on her mid-thigh while they watched television and talked. Defendant touched her thigh at least two more times when she was in his house.

Starting in her freshman year of high school, defendant started hugging Doe in a way that made her uncomfortable. He would place his hands around her waist and, on at least two occasions, touched her buttocks. Around the same time, defendant began slapping Doe on the buttocks when she was at his house. In total, he slapped her buttocks between five and 10 times.

In her freshman and sophomore years of high school, defendant drove Doe to the dentist between three and five times. On one of the return trips, while Doe was wearing capri pants, defendant placed his hand on her mid-thigh for about a minute and asked her why she did not wear " 'short dresses and shorts or stuff like that.' "

One day in her sophomore or beginning of her junior year of high school, when she was 15 or 16 years old, Doe was running late and did not have a ride to school. That day she was wearing a long-sleeved yellow dress that went to her knees. As she walked toward her school, she saw defendant driving down the same street. He rolled down his window and asked if she needed a ride to school and she accepted. As defendant drove, he asked her why she did not come over to his house as often as she used to and why she did not wear " 'shorter stuff or shorter dresses' " when she came over to his house. At some point during the drive, he placed his right hand on the exposed skin of her left mid-thigh and moved his hand up and down, along her leg.

When defendant and Doe reached her school, defendant locked the car door. He asked her again why she was not " 'wearing any more pretty things or shorter things.' " Doe reached for the door and defendant " 'pulled [her] head down,' " striking her head against the gear shift. She then saw that his belt was unbuckled, which scared her, and she tried to exit the car again. Defendant grabbed her dress as she tried to exit and it

3.

ripped. Doe attempted to push defendant back and struck him in the mouth, causing him to bleed. Defendant pulled Doe again, getting blood on her dress, and touched her vagina with his hand. Doe struck defendant again, unlocked the door, exited the car, and ran to the school office.

Kern County Sheriff's Deputy Jessie Alvarez arranged a pretext phone call between defendant and Doe. During that call, Doe asked defendant why he touched her when he gave her a ride to school. Defendant responded that he was " 'just playing with [her,]' " was " '[j]ust joking[,]' " that she was a girl to him, and that he respected her. He acknowledged " 'spank[ing]' " Doe, " 'tickl[ing]' " her knees or legs, and " 'pull[ing] [her] pants' " but insisted that he was playing or joking. When Doe asked defendant about him pulling her head down when he gave her a ride to school, he told her not to think about it and to forget it.

**Defendant's Case**

Defendant called nine family members and friends to testify. They all testified that they had never seen him touch anyone inappropriately. Defendant's wife testified that Doe was untrustworthy because she stole from her three times and stole cosmetics from defendant's daughters, and said she was going to make defendant pay because she got in trouble for drinking alcohol at a party at defendant's house. Defendant's son also testified that Doe was caught drinking and was untrustworthy because she was caught stealing.

Defendant testified in his own defense. Doe came by defendant's house nearly every weekend, and he drove her to school many times and to the dentist at least once. He testified that he never touched Doe inappropriately or made inappropriate comments to her during car rides or at his home. On one occasion, defendant tickled Doe on the knee on the way to school to tease her about the fact that her jeans were ripped. Defendant denied ever having kicked or spanked Doe. His statement during the pretext call that he kicked or spanked Doe was false.

4.

Defendant testified that Doe was mad at him because he told her parents that she was drinking alcohol at a party at his house.

## DISCUSSION

Defendant concedes that the evidence was sufficient to support a conviction for misdemeanor false imprisonment. However, he argues that the evidence was insufficient to establish that he used "*violence*, i.e., the exercise of physical force used to restrain" or "*menace*, i.e., a threat of harm, express or implied by word or act," at least one of which was required to elevate the conviction from misdemeanor to felony false imprisonment. Defendant's contention is without merit. The verdict on count 3 was supported by sufficient evidence.

"In reviewing a challenge to the sufficiency of the evidence under the due process clause of the Fourteenth Amendment to the United States Constitution and/or the due process clause of article I, section 15 of the California Constitution, we review the entire record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Cole* (2004) 33 Cal.4th 1158, 1212; accord, *People v. Albillar* (2010) 51 Cal.4th 47, 59–60.) "We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Albillar*, *supra*, at p. 60.) It is well-settled that " '[a] reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' " (*People v. Penunuri* (2018) 5 Cal.5th 126, 142.)

False imprisonment is the unlawful violation of the liberty of another, compelling the victim to go where he or she does not wish to go or remain where he or she does not

wish to remain. (§ 236; *People v. Bamba* (1997) 58 Cal.App.4th 1113, 1121.) False imprisonment " 'effected by violence, menace, fraud, or deceit' " is punishable as a felony. (§ 237, subd. (a); see *People v. Reed* (2000) 78 Cal.App.4th 274, 280 (*Reed*).) " ' "Violence"… means the " 'the exercise of physical force used to restrain *over and above the force reasonably necessary to effect such restraint*.' " ' [Citations.] 'Menace' is defined as ' " 'a threat of harm express or implied by word or act.' " ' " (*Reed*, *supra*, at p. 280, italics added.)

The evidence supports defendant's conviction because there was substantial evidence of violence.[4]

The parties both discuss *People v. Castro* (2006) 138 Cal.App.4th 137—the People contend that *Castro* is instructive, and defendant attempts to distinguish *Castro*. We agree with the People. In *Castro*, the defendant tried to convince the victim to enter his car and propositioned her. (*Id*. at p. 141.) As the victim walked away, the defendant grabbed and held her by the forearm. (*Ibid*.) The defendant turned the victim around by the wrist and " 'gave [her] a little tug, like a pull toward him' " and his car. The defendant's pull caused the victim to take a " 'couple of steps' " toward his car before she pulled away and ran. (*Id*. at pp. 141–142.) The *Castro* court explained that grabbing the victim and turning her around amounted only to misdemeanor false imprisonment. (*Id*. at p. 143.) However, when the defendant "pulled her toward his car, an act more than what was required to stop her and keep her where she was located[,]" he committed felony false imprisonment by using "force above that required for misdemeanor false imprisonment." (*Ibid*.)

---

**4**     We do not address whether sufficient evidence of menace existed to sustain the conviction because we find the evidence of violence to be sufficient to sustain the conviction, because the verdict form indicated that the jury found defendant guilty of "[f]alse imprisonment with violence," and because the People do not argue that defendant used menace to effect the false imprisonment.

6.

In this case, when defendant gave Doe a ride to school, he did not just grab and hold her in the passenger seat. According to Doe's testimony, when she tried to open the locked passenger door, defendant grabbed her by her hair, "pulled [her] head down, and he … pushed [her] head down, and that's where [she] hit [her]self with the" gear shift. At that point, she saw that his belt was unbuckled and again attempted to exit the car. As she did so, defendant pulled and ripped her dress. Doe then struck defendant in the mouth and again attempted to exit the car. Defendant pulled Doe for a third time and grabbed her vagina.

When defendant initially grabbed Doe as she attempted to exit the locked passenger door and pulled her head down and toward the driver side of the car (causing her head to strike the gear shift), he used force above that required to keep her where she was located. Defendant also used more force than necessary to restrain Doe when he grabbed her vagina as she again tried to escape through the locked passenger door. (*People v. Ghipriel* (2016) 1 Cal.App.5th 828, 834 [touching the victim's breasts and vagina supported false imprisonment convictions because those acts "were not needed to restrain or otherwise violate [the victim's] liberty"].)

Defendant's arguments to the contrary are unconvincing. Defendant argues that no " ' " 'physical force [was] used to restrain *over and above the force reasonably necessary to effect such restraint*' " ' " because he used force "while [Doe] was trying to escape from the car." However, the fact that Doe was attempting to escape when defendant used force is not dispositive of whether the force used was more than necessary to effect the restraint. Based on Doe's testimony, defendant pulled her head further into the vehicle and touched her vagina. That evidence was sufficient to support a finding that defendant used more than the force necessary to keep Doe in the passenger seat of the car.

Defendant further notes that during the restraint he did not use a weapon, did not move Doe from the car in which he first confined her, and did not punch or kick her

7.

while someone else moved her.  Although the use of a weapon, (*Reed*, *supra*, 78 Cal.App.4th at p. 281 [use of a weapon to effectuate felony false imprisonment was sufficient to establish violence or menace]; *People v. Williams* (2017) 7 Cal.App.5th 644, 672 [same]) striking a victim, (see *People v. Fernandez* (1994) 26 Cal.App.4th 710, 713, 718 [restraining the victim while others applied more than 20 kicks was sufficient force to constitute felony false imprisonment]) or moving a victim toward an intended place of imprisonment (*People v. Castro*, *supra*, 138 Cal.App.4th at pp. 141–142), would all support a finding of violence or menace, the absence of those facts does not impact our conclusion that the force used was more than necessary to keep Doe where she was located.

## DISPOSITION

The judgment is affirmed.